**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| ALESHIA HARRIS, on behalf of ) | |
| M.I.D.H., a minor, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:24-cv-00933 (RDA/WBP) |
| ) | |
| FRANK J. BISIGNANO, Commissioner of ) | |
| Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

**<u>PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS</u>**

In this Social Security appeal, the parties have filed cross-motions for summary

judgment. (ECF Nos. 11, 15.) Under 42 U.S.C. § 405(g), Aleshia Harris ("Plaintiff") seeks

judicial review of a final decision of Martin O'Malley, the then-Commissioner of the Social

Security Administration ("Commissioner"), denying her claim for Supplemental Security Income

("SSI") under the Social Security Act. (ECF No. 1.) The Commissioner's final decision rests on

findings by an Administrative Law Judge ("ALJ") (Administrative Record ("AR") 7–36) and the

Appeals Council for the Office of Appellate Operations ("Appeals Council") (AR 1–6). The ALJ

found that Plaintiff's minor child, M.I.D.H., was not disabled as defined by the Social Security

Act and its applicable regulations, and the Appeals Council denied Plaintiff's request to review

the ALJ's decision. (AR 1, 25.)

---

[1] Plaintiff filed this action against Martin O'Malley, then Acting Commissioner of Social
Security. Under Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Frank J.
Bisignano should be substituted for Mr. O'Malley as the defendant here. No further action needs
to be taken to continue this matter because "any action instituted in accordance with . . .
subsection [405(g)] shall survive notwithstanding any change in the person occupying the office
of Commissioner of Social Security or any vacancy in such office." *See* 42 U.S.C. § 405(g).

Under 28 U.S.C. § 636(b)(1)(C), I recommend that the district judge vacate the ALJ's January 9, 2024, final decision and remand the case for further consideration consistent with these Proposed Findings of Fact and Recommendations.

## I.     STANDARD OF REVIEW AND LEGAL BACKGROUND

Under the Social Security Act, a district court must affirm the Commissioner's final decision "when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). The term "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Easterbrook v. Kijakazi*, 88 F.4th 502, 511 (4th Cir. 2023) (citing *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 353 (4th Cir. 2023) and quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted). "A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). The decision should include a discussion of which evidence the ALJ found credible and why. *Id*. (citing *Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989)).

While the court reviews the Commissioner's decision with deference to the factual findings, the court gives no such deference to its legal conclusions. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted). The court must reverse when the Commissioner fails to apply the correct law or to provide sufficient reasoning for the court to verify the legal analysis. *See id.* at 1260 (citation omitted). The scope of review is thus

limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Brown v. Comm'r of Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017) (citations omitted).

## II.  APPLICABLE LAW AND THE THREE-STEP SEQUENTIAL EVALUATION FOR CHILDREN

To be entitled to benefits, a child claimant must be disabled, meaning the child must have a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or that has lasted or can be expected to last for a continuous period of at least twelve months. *See* 42 U.S.C. § 1382c(a)(3)(C)(i). A qualifying "physical or mental impairment" is one that results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3) (SSDI), 1382c(a)(3)(D) (SSI).

The Social Security Administration's ("SSA") regulations establish a three-step "sequential evaluation process" to determine whether a child claimant is disabled. 20 C.F.R. §§ 416.924(b)–(d), (g). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe; and (3) whether the severe impairment or combination of impairments meets, medically equals, or functionally equals a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 416.924(a)–(d), 416.925, 416.926a. The claimant bears the burden to prove that the

impairment or impairments medically or functionally equal one of the listed impairments. *S.R. ex rel. R.R. v. Barnhart*, 371 F. Supp. 2d 796, 799 (W.D. Va. 2005).

To medically equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings at least equal in severity and duration to each element of the most similar listed impairment. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999) (quoting 20 C.F.R. § 404.1526 (SSDI)); *see Sullivan v. Zebley*, 493 U.S. 521, 531 (1990); *see also* 20 C.F.R. § 416.926 (SSI). To determine whether an impairment functionally equals a listed impairment, the ALJ must evaluate the claimant's functional limitations in six domains: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). The ALJ will consider whether and how the impairment affects a claimant's functioning in each domain compared to similarly aged children without impairments: what the claimant can or cannot do successfully, needs help doing, has difficulty doing, and is restricted from doing due to the cumulative effects of the impairment. *Id*. §§ 416.926a(b)(2), 416.926a(a).

A child is functionally disabled if the ALJ determines that the child has an impairment or combination of impairments of "listing-level severity" that result in an "extreme" limitation in at least one domain or a "marked" limitation in two or more domains. *Id*. § 416.926a(a). A "marked" limitation is one that "seriously" interferes with the claimant's ability to independently initiate, sustain, or complete activities. *Id*. § 416.926a(e)(2)(i). A "marked" limitation is "more than moderate" but "less than extreme." *Id*. An "extreme" limitation "very seriously" interferes with the claimant's abilities. *Id*. § 416.926a(e)(3).

4

### III.    BACKGROUND

#### A.    Procedural and Administrative History

On October 28, 2014, Plaintiff applied for SSI on behalf of her son, M.I.D.H., with an alleged disability onset date of September 24, 2014. (AR 534, 608.) The SSA denied Plaintiff's SSI application on March 12, 2015. (AR 128.) Two days later, Plaintiff requested that the SSA reconsider its denial (AR 218–19), and on March 16, 2015, the Plaintiff appointed John O. Goss, J. Russell Fentress, IV, and Erick A. Bowman of Goss & Fentress, PLC as her representatives (AR 220–23). On August 31, 2015, the SSA denied Plaintiff's request for reconsideration (AR 224–32), so Plaintiff requested a hearing before an ALJ (AR 233–35).

On June 5, 2017, ALJ Thomas Ray held a hearing (AR 265), and on November 9, 2017, he issued a written decision denying Plaintiff's claim (AR 146–62). Plaintiff appealed the ALJ's decision, and the Appeals Council remanded the claim because of a constitutional defect with the appointment of Mr. Ray as the ALJ. (AR 168.) On November 23, 2022, another ALJ, F.H. Ayer, held a new administrative hearing (AR 66–90), and on December 15, 2022, he issued a decision that was unfavorable to Plaintiff (AR 171–98). Plaintiff appealed, and on March 16, 2023, the Appeals Council vacated the ALJ's decision for legal error. (AR 209–10.)

ALJ Ayer held his second in-person hearing on Plaintiff's claim (which was Plaintiff's third hearing on her claim) on September 12, 2023, where Plaintiff and M.I.D.H. appeared with Robert Silberman as their representative. (AR 48–65.) Plaintiff and M.I.D.H. testified and answered questions from their representative (AR 48–62) and from the ALJ (AR 62–65). Joseph Goodman, a vocational expert, was present at the hearing, but he did not testify and neither counsel nor ALJ Ayer asked him any questions. By written decision dated January 9, 2024, ALJ Ayer determined that M.I.D.H. was not disabled under the Social Security Act as of the amended

alleged onset date of September 1, 2019. (AR 10–26.) Plaintiff asked the Appeals Council to reconsider the ALJ's decision, but it denied the request on April 5, 2024. (AR 1–6.) Therefore, the ALJ's January 9, 2024, decision became the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481.

On May 31, 2024, Plaintiff timely filed this civil action under 42 U.S.C. § 405(g) asking for judicial review of the Commissioner's final decision. (ECF No. 1.) Plaintiff moved for summary judgment on July 22, 2025 (ECF No. 11), the Commissioner moved for summary judgment on August 28, 2025 (ECF No. 15), and Plaintiff responded on September 9, 2025 (ECF No. 18). The motions are fully briefed. The parties waived oral argument (ECF Nos. 13, 17), and the case is ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

**B.**        **General Background and M.I.D.H.'s Records**

Born on April 7, 2008, M.I.D.H. was eleven years old on the amended alleged disability onset date of September 1, 2019, and fifteen years old at the time of ALJ Ayer's January 9, 2024, decision. (AR 11, 26.) M.I.D.H. is now eighteen years old.

At all relevant times, M.I.D.H. has attended school: elementary school until 2020, middle school until 2022, and high school at the time of the ALJ's decision at issue. (*See* AR 18.) M.I.D.H.'s alleged disabilities are attention-deficit disorder ("ADHD") and a mood disorder. (AR 123, 133.)

M.I.D.H.'s medical history includes diagnoses of asthma, a bee venom allergy, a gunshot wound to his right foot, ADHD, a learning disability, bilateral astigmatism, allergic rhinitis, a dental disorder, nocturnal enuresis, and a mood disorder, anxiety disorder, or trauma- and

stressor-related disorder. (AR 11, 1118–2764.) M.I.D.H. has received treatment to help him regulate his emotions and manage his behavior. (AR 264–65, 2343–2463.)

    **C.**      **Consultative Examinations and State Agency Psychological Assessments**

On March 11, 2015, Leslie Ellwood, M.D., and Howard S. Leizer, Ph.D., psychologically evaluated M.I.D.H. (AR 123–31.) These doctors found that the objective medical evidence alone did not substantiate M.I.D.H.'s and Plaintiff's statements but that M.I.D.H.'s presentation was "partially credible." (AR 128.) M.I.D.H. was taking his medications twice a day without reminders, he did not require special education services, and he was getting along with nearly everyone. (AR 125–26.) These doctors determined that M.I.D.H. had no limitation in acquiring and using information, attending and completing tasks, moving about and manipulating objects, and caring for himself. (AR 126–27.) They also determined that M.I.D.H. has some difficulties interacting and relating with others and maintaining his health and physical well-being but that these difficulties improved with ADHD medication, resulting in less than marked limitations in these domains. (AR 127.) These doctors ultimately concluded that M.I.D.H.'s impairments were not severe and that he was not disabled. (AR 126, 128.)

Upon reconsideration on August 31, 2015, Joseph Familant, M.D., and Leslie E. Montgomery, Ph.D., determined that, although M.I.D.H.'s and Plaintiff's statements were "partially credible . . . . [s]ome symptoms appear[ed] to be disproportionate to the severity and duration that would be expected" given his impairments. (AR 140.) At the time, Plaintiff reported that M.I.D.H. was presenting as friendly, loving, and honest and that he was experiencing "meltdowns" when he was upset but that he was able to find ways to cope. (AR 137.) These doctors concluded that M.I.D.H. was not disabled (AR 140) because he had no

limitations in three domains, a less than marked limitation in two domains, and only a marked limitation in one domain—interacting and relating with others (AR 138–39).

### D.      Individualized Education Programs and Teacher Questionnaires

M.I.D.H.'s February 21, 2020, elementary school Individualized Education Program ("IEP") noted that his deficits in alertness impacted his schoolwork and social interactions. (AR 1455, 1461.) Although he could complete his classwork in a general setting, special education teachers helped him with mathematics, reading, and writing. (*Id.*) M.I.D.H. regularly needed prompting, had difficulties completing and turning in his homework, and was aggressive against others. (AR 15.) His teachers, however, described him as a smart and capable young man who is reluctant to show what he knows in front of peers. (AR 1455–56.)

On March 12, 2020, M.I.D.H.'s Language Arts teacher, Sarah Hutchinson, completed a teacher questionnaire. (AR 692.) Ms. Hutchinson had known M.I.D.H. for seven months and spent approximately 250 minutes per week with him. (AR 685.) Although M.I.D.H. was in sixth grade, Ms. Hutchinson noted that he was still reading, writing, and performing mathematics at fourth- or fifth-grade levels. (*Id.*) Ms. Hutchinson opined that M.I.D.H. was having slight to serious problems in "acquiring and using information" and "attending and completing tasks"; no problems in "moving and manipulating objects" and with maintaining his "health and physical well-being"; obvious to serious problems in "interacting and relating with others;" and no problems to very serious problems in "caring for himself." (AR 686–90.) She also documented that a doctor had prescribed ADHD medication for M.I.D.H., which improved his ability to independently complete assignments and stay focused, but that he acted disruptively and went off task when he did not regularly take his medication. (AR 687.)

When M.I.D.H. entered ninth grade, his high school evaluated him psychologically. (AR 1533.) In the July 19, 2022, report, the school psychologist, Hannah Sugarman, Ph.D., determined that M.I.D.H. appeared to be internalizing depression and anxiety symptoms that were likely affecting his behavior and ability to accomplish academic tasks. (AR 17.) She pointed to M.I.D.H.'s "extensive" disciplinary record (24 incidents and 42 violations) as evidence that his emotional dysregulation affected his decision-making processes. (AR 16.) M.I.D.H.'s scores within the "extremely low" range likely reflected his difficulty staying engaged and completing tasks rather than his actual ability. (AR 17.) Dr. Sugarman concluded that he is a "bright adolescent who had the capacity to learn and socialize when . . . provided appropriate supports" but that he would continue to need special education services to succeed. (*Id*.)

Following Dr. Sugarman's recommendations, M.I.D.H.'s high school re-evaluated his IEP. (*See* AR 1539.) According to the June 1, 2023, IEP, M.I.D.H. had an F in five classes and a C in one class, but he was expected to graduate on time with a standard diploma. (AR 846, 856.) His teachers reported that he had difficulty completing and turning in assignments, attending class, and staying focused without additional prompting. (AR 849.) M.I.D.H.'s emotional understanding was improving, but he still had difficulty making appropriate decisions when interacting with peers. (AR 852.) The IEP designated special accommodations for M.I.D.H., including extended classroom time, frequent breaks, and a behavior intervention plan, but did not place him in special education classes. (AR 855.)

### E.    The ALJ's Decision

In the administrative decision, the ALJ concluded that M.I.D.H. had not engaged in substantial gainful activity since September 1, 2019, the amended alleged onset date. (AR 11.)

After a hearing and review of the record, the ALJ determined that M.I.D.H. had the following medically determinable impairments: asthma, a bee venom allergy, a right-foot gunshot wound with a great toe fracture status post debridement and irrigation, ADHD, a learning disability, and a mood disorder, anxiety disorder, or trauma- and stressor-related disorder. (*Id.*) Despite these impairments, the ALJ determined that M.I.D.H. did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ also concluded that M.I.D.H. did not have an impairment or combination of impairments that functionally equaled the severity of an Appendix 1 listing. (AR 12.) The ALJ determined that M.I.D.H. had marked limitations in the domain "interacting and relating with others;" less than marked limitations in the domains "acquiring and using information," "attending and completing tasks," "caring for oneself," and "health and physical well-being;" and no limitations in the domain "moving about and manipulating objects." (AR 13.)

In assessing M.I.D.H.'s functioning, the ALJ considered Plaintiff's and M.I.D.H.'s subjective complaints and determined that, although the evidence established underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's and M.I.D.H.'s statements as to symptom intensity, persistence, and limiting effects were not entirely consistent with the medical and educational evidence. (AR 14.)

The Appeals Council declined to review the ALJ's decision, finding no reason to do so under its rules. (AR 1.)

The Court must examine this process to determine whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's final decision. *See* 20 C.F.R. § 416.924(a).

### IV.    ANALYSIS

Plaintiff's motion for summary judgment alleges that the ALJ erred by finding less than marked limitations in the "attending and completing tasks" and "caring for oneself" domains. (ECF No. 12 at 1.) Plaintiff argues that, despite giving significant weight to the teacher questionnaire and adopting her evaluation in the "interacting and relating with others" domain, the ALJ failed to explain why he disregarded the same teacher's observations in two other functional domains. (*Id.*) Plaintiff asks the Court to vacate and remand the ALJ's decision and to order the SSA to conduct a new evidentiary hearing. (*Id.* at 20.) The Commissioner's motion for summary judgment argues that the ALJ sufficiently explained his opinion and that Plaintiff improperly asks the Court to reweigh the evidence. (ECF No. 16 at 12.)

The ALJ described Ms. Hutchinson's teacher questionnaire, which reported that, while M.I.D.H. was in sixth grade at the time of the evaluation, he was reading, performing math, and writing at a fourth or fifth grade level. (AR 18.) The ALJ then summarized Ms. Hutchinson's observations within each domain. For the "acquiring and using information" domain, Ms. Hutchinson opined that M.I.D.H. was having slight problems in six activities, obvious problems in two activities, and serious problems in two other activities. (AR 686.) In the "attending and completing tasks" domain, she observed that M.I.D.H. was experiencing daily problems in all thirteen activities: slight problems in one activity, obvious problems in seven activities, and

11

serious problems in five activities.[2] (AR 687.) Ms. Hutchinson observed that in the "interacting and relating with others" domain, M.I.D.H. experienced obvious problems in two activities weekly and five activities daily and that he experienced serious problems in three activities weekly and three activities daily.[3] (AR 688.) As for M.I.D.H.'s speech, she had difficulty understanding him one-half to two-thirds of the time when the conversation topic was known but no more than one-half the time when the conversation topic was unknown. (AR 689.) She also identified that one of M.I.D.H.'s IEP goals is to improve his ability to express himself without anger or frustration. (*Id*.) In the domain "moving about and manipulating objects," Ms. Hutchinson reported that M.I.D.H. has no problems. (*Id*.) As for "caring for oneself," the teacher evaluation indicates that M.I.D.H. was experiencing very serious problems in three activities, serious problems in four activities, and an obvious problem in one activity daily, and no problems in two other activities.[4] (AR 690.)

---

[2] The activities are as follows: paying attention when spoken to directly, sustaining attention during play or sports activities, focusing long enough to finish assigned activities or tasks, refocusing to a task when necessary, carrying out single-step instructions, carrying out multi-step instructions, waiting to take turns, changing from one activity to another without being disruptive, organizing ones' own things or school materials, completing classroom or homework assignments, completing work accurately without careless mistakes, working without distracting oneself or others, and working at a reasonable pace and finishing on time.

[3] The activities are as follows: playing cooperatively with other children, making and keeping friends, seeking attention appropriately, expressing anger appropriately, asking permission, following rules in the classroom and in sports, respecting or obeying adults in authority, relating experiences and telling stories, using language appropriate to the situation and the listener, introducing and maintaining relevant and appropriate topics of conversation, taking turns in a conversation, interpreting the meaning of facial expressions, body language, hints, or sarcasm, and using adequate vocabulary and grammar to express one's thoughts or ideas in everyday conversations.

[4] The activities are as follows: handling frustration appropriately, being patient when necessary, taking care of one's personal hygiene, caring for one's physical needs such as dressing and eating, cooperating in or being responsible for taking medication, using good judgment regarding personal safety and dangerous circumstances, identifying and appropriately asserting one's

She further explained that M.I.D.H. "has difficulties regulating his emotions with peers and sometimes adults" and that "he skips class, disrupts the learning of others, disregards school safety by running in the hallways and [is] off tasks during assignments." (*Id.*) In the sixth domain, "health and physical well-being," Ms. Hutchinson identified no physical chronic or episodic conditions that affect M.I.D.H.'s functioning at school. (AR 19, 691.) Finally, she reported that, while a doctor prescribed ADHD medication for M.I.D.H., he does not take it regularly, which leads him to be easily distracted, exhibit increased disruptive behavior, and experience built up energy. (AR 691.)

The ALJ gave Ms. Hutchinson's evaluation "significant weight, as it is consistent with the remainder of the objective evidence of record including the school and medical records." (AR 19.) The ALJ stated that the "teacher questionnaire suggests less than marked limitations" in "attending and completing tasks" and in "caring for himself" but that it "shows some degree of difficulty" in the domain "interacting and relating with others." (AR 20–24.)

I recommend that the district judge vacate and remand the ALJ's decision because the ALJ failed to explain how the teacher questionnaire supported his findings that M.I.D.H. had less than marked limitations in the domains "caring for oneself" and "attending and completing tasks."

### A.    "Caring for Oneself"

The ALJ's decision on the "caring for oneself" domain is internally contradictory. A reviewing court must scrutinize the record to ensure that the Commissioner's findings are "rational" and supported by "such relevant evidence as a reasonable mind might accept as

---

emotional needs, responding appropriately to changes in one's mood and calming oneself, using appropriate coping skills to meet daily demands of a school environment, and knowing when to ask for help.

adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted); *Boyd v. Kijakazi*, No. 4:22-cv-03836-TER, 2024 WL 356882, at *3 (D.S.C. Jan. 31, 2024). For example, in *Tameisha M. o/b/o T.M. v. Berryhill*, the court remanded because the Commissioner's finding that the minor child was not disabled was not well reasoned. 340 F. Supp. 3d 573, 575 (W.D. Va. 2018). In that case, a teacher questionnaire reported that the child had obvious or serious problems in six of the ten activities in "acquiring and using information" and obvious, serious, or very serious problems in nine of the thirteen activities in "attending and completing tasks." *Id*. at 576–77. The ALJ relied on the teachers' opinions in determining that the child had marked limitations in the former domain and less than marked limitations in the latter. *Id*. The court remanded because the ALJ "failed to explain why he gave no weight to the portions of the same questionnaire addressing plaintiff's limitations in the area of attending and completing tasks." *Id*. at 576.

The Court finds *Tameisha M.* instructive. As applied here, Ms. Hutchinson found serious problems in six of thirteen areas on a daily or weekly basis in the domain "interacting and relating with others," and M.I.D.H.'s IEP includes resources to address his anger and frustration. (AR 688.) Ms. Hutchinson also opined that M.I.D.H. daily experiences serious or very serious problems in seven of ten activities in the domain "caring for oneself"—that he struggles to regulate his emotions with peers and adults and disregards school safety. (AR 690.) *See Mascio*, 780 F.3d at 637 (holding that the ALJ must assess the claimant's ability to perform tasks for a full workday). As in *Tameisha M.*, while Ms. Hutchinson reported that M.I.D.H. experienced more significant problems in the domain "caring for oneself" than in the domain "interacting and relating with others," the ALJ determined that M.I.D.H.'s limitations were less than marked in "caring for oneself" and marked in "interacting and relating with others." While the ALJ relied

14

on Ms. Hutchinson's report to find marked limitations in "interacting and relating with others," he did not explain why he rejected Ms. Hutchinson's questionnaire and found "few limitations" in the "caring for oneself" domain. (AR 24.)

Because the ALJ does not explain how he used Ms. Hutchinson's teacher questionnaire to support some, but not all of his findings, the Court cannot readily discern how the teacher questionnaire supports his findings as a whole. While an ALJ need not adopt an opinion in its entirety to find it generally persuasive, his "decision cannot be supported by substantial evidence when he fails to adequately explain his rationale for rejecting the opinions of those whom he otherwise gave great weight to in arriving at his decision." *Warren v. Astrue*, No. 2:08-cv-00003, 2008 WL 3285756, at *11 (W.D. Va. Aug. 8, 2008); *see, e.g.*, *Turner v. Comm'r of Soc. Sec.*, No. 23-1760, 2024 WL 2764722, at *5 (4th Cir. May 30, 2024) (unpublished).

The ALJ credited Ms. Hutchinson's teacher questionnaire more than any other piece of evidence. The ALJ gave Ms. Hutchinson's opinion "significant weight" because it is consistent with the rest of the record and was given "after many hours of direct observation," and gave the consultative examinations "little weight" because "they were presented over four years prior to the amended alleged onset date." (AR 18–19.) The ALJ repeatedly cited the questionnaire in the explanations for the individual domains (*see* AR 21, 22, 24), and nowhere else indicated weight for any other evidence, so the Court must infer that he gave the questionnaire the most weight.

In arriving at his decision, the ALJ credited the teacher's opinion in the "interacting and relating with others" domain by finding marked limitations but discredited the same questionnaire in the "caring for oneself" domain by finding less than marked limitations. Yet the Court is "left to guess" why the ALJ found Ms. Hutchinson's assessment credible in one domain but not another. *See Mascio*, 780 F.3d at 637 (remanding because ALJ failed to explain how he

15

decided which statements to believe and which to discredit); *Murphy v. Astrue*, 496 F.3d 630, 635 (7th Cir. 2007) (remanding because although some traits indicate that claimant could attend and complete tasks, the ALJ did not explain how or why they trump the evidence of claimant's limitations in that domain); *cf. Shinaberry v. Saul*, 952 F.3d 113, 122 (4th Cir. 2020) (finding that the ALJ sufficiently explained his RFC assessment because the ALJ addressed impairments, set out limitations, and explained why the evidence supported certain limitations but not others).

The ALJ does not identify what objective evidence contradicts the teacher's observations. *See, e.g.*, *Mary R. v. Saul*, No. 3:19-cv-00903, 2021 WL 388463, at *6 (E.D. Va. Jan. 19, 2021) (finding that an ALJ adequately addressed the supportability factor when they found that a medical provider's opinion "was less supported because [the provider] found extreme limitations even though he observed [the plaintiff] to be cooperative with good eye contact"). He does not evaluate the relevant record evidence when addressing Ms. Hutchinson's questionnaire. *See Boyd v. Kijakazi*, No. 2:21-cv-00029, 2022 WL 949904, at *3 (E.D. Va. Mar. 29, 2022) ("[T]he ALJ here did not connect the record evidence she discussed elsewhere to Dr. Bernens' opinion. Without some such connection, the ALJ failed to build the required bridge between her discussion of the record evidence in other portions of her opinion and the question of whether Dr. Bernens' opinion was consistent with that evidence."); *Brown*, 873 F.3d at 269 (a decision must "build an accurate and logical bridge from the evidence to his conclusion") (citations omitted); *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019); 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017).

Substantial evidence therefore cannot support the ALJ's decision in the "caring for oneself" domain because he did not adequately explain why he rejected Ms. Hutchinson's opinion there despite giving it "significant weight" elsewhere. *See Monroe v. Colvin*, 826 F.3d

16

176, 191 (4th Cir. 2016) (giving different weights to various opinions without specific explanation frustrates the court's review); *Warren*, 2008 WL 3285756, at *11.

The ALJ's decision lacks the necessary and specific analysis to support each conclusion as to M.I.D.H.'s functional equivalence. *See Monroe*, 826 F.3d at 189. The ALJ must reasonably articulate his decision to "allow a subsequent reviewer . . . to trace the path of an adjudicator's reasoning." 82 Fed. Reg. 5844, 5858; 20 C.F.R. § 416.927(f)(2). The Commissioner contends the Court should ignore the decision's contradictions and deficiencies and search the remaining record for evidence that supports the ALJ's decision. (*See* ECF No. 16 at 14–15.) But "[t]he mere discussion of record evidence in other portions of the opinion without any tie specifically to an analysis of [the teacher's] opinion does not assist the Court in tracing the path of the ALJ's reasoning." *Roye v. Bisignano*, No. 1:24-cv-02296-MSN, 2026 WL 821813, at *9 (E.D. Va. Mar. 25, 2026). The record also contains evidence favoring Plaintiff, so the Court would need to use its own judgment to selectively weigh the evidence that would bolster the ALJ's findings. *Boyd*, 2022 WL 949904, at *2. This approach would require the Court, rather than the ALJ, to justify the ALJ's conclusion after the fact. *Torres v. Colvin*, No. 1:14-cv-00007-RLV, 2016 WL 54933, at *9 (W.D.N.C. Jan. 5, 2016) ("It is neither the Commissioner's nor this Court's duty to fill-in the gaps for the ALJ.").

The Commissioner points to other evidence that the ALJ cited, such as IEP notes and consultative examinations, to support the finding that M.I.D.H. is not disabled (ECF No. 16 at 15–16), but the Court cannot ignore the ALJ's determination in search of other evidence that the ALJ found less compelling and gave less weight than the teacher questionnaire. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (holding that a court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the

Secretary"); *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) (concluding that the ALJ and not the reviewing court must consider and resolve any evidentiary conflicts).

The ALJ's decision is contradictory, and he otherwise failed to explain how he reached his conclusion that the teacher questionnaire supports a finding of less than marked limitations in the "caring for oneself" domain.

I therefore recommend that the district judge vacate and remand the ALJ's determination.

**B.        "Attending and Completing Tasks"**

The ALJ's reasoning in this domain is not facially contradictory, but it is inadequately explained. As previously noted, Ms. Hutchinson opined that M.I.D.H. suffered slight problems in one activity, obvious problems in seven activities, and serious problems in five activities in the domain of "attending and completing tasks." (AR 687.) He thus experienced serious problems in five of the thirteen activities and at least obvious problems in twelve of the thirteen activities, all on a daily basis. In comparison, M.I.D.H. experienced serious problems in six of the thirteen activities and at least obvious problems in all thirteen of the activities, all on a daily basis in the domain of "interacting and relating with others." (AR 688.)

*Tameisha M.* is instructive here, too. As in that case, the ALJ did not "explain how the teacher['s] ratings were insufficient to establish a marked limitation in the area of attending and completing tasks and instead supported his determination that [M.I.D.H.] has less than marked limitations in this domain." *Tameisha M.*, 340 F. Supp. 3d at 578. Whether the difference in Ms. Hutchinson's ratings between the two domains is meaningful or nominal is unclear. *See id.* (highlighting that the ALJ "did not address the portions of the questionnaire indicating that plaintiff has an 'obvious' problem"). It is possible that the evaluation supports the finding that M.I.D.H.'s limitations do not "seriously" interfere with his ability to independently initiate,

sustain, or complete activities in the "attending and completing tasks" domain. 20 C.F.R. § 416.926a(e)(2)(i) (defining a marked limitation). The ratings might instead support marked limitations in this domain that, with medications (AR 18, 687), are so reduced that they become less than marked. *See Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (considering effectiveness of medications); *Calabrese v. Astrue*, 358 F. App'x 274, 277–78 (2d Cir. 2009) (considering whether claimant was "noncompliant" with prescribed medication regime). Further, when considering the ALJ's previous contradictory findings, the Court "remain[s] uncertain as to what the ALJ intended." *Mascio*, 780 F.3d at 636 (finding remand appropriate "where other inadequacies in the ALJ's analysis frustrate meaningful review").

I therefore recommend that the district judge vacate and remand the ALJ's determination.

## V.    **RECOMMENDATION**

I find that the ALJ's decision failed to build a logical bridge between the teacher questionnaire and his conclusion that M.I.D.H. is not disabled. This error is not harmless. Because the ALJ already found marked limitations in "interacting and relating with others," a finding of marked limitations in either the "caring for oneself" or "attending and completing tasks" domain would give M.I.D.H. marked limitations in two domains, which would require a finding that he is disabled. 20 C.F.R. § 416.926a(a).

For these reasons, I recommend that the district judge grant Plaintiff's Motion for Summary Judgment and deny the Commissioner's Motion for Summary Judgment. I further recommend that the district judge vacate the ALJ's January 9, 2024, decision and remand this case for further consideration consistent with this Proposed Findings of Fact and Recommendations.

19

## VI.    NOTICE

The Court will serve this Proposed Findings of Fact and Recommendations on all parties through its electronic filing system. Objections to this Proposed Findings of Fact and Recommendations must be filed within 14 days of service. Failure to file timely objections waives appellate review of both the substance of this Proposed Findings of Fact and Recommendations and any judgment entered on it.

Entered this 24th day of June 2026.

_____
William B. Porter
United States Magistrate Judge

Alexandria, Virginia